UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE RICE,<br><br>    Petitioner,<br><br>    v.<br><br>CYNTHIA Y TAMPKINS,<br><br>    Respondent. | No. 2:15-cv-00700 GGH HC<br><br><br>ORDER[1] |

*Introduction and Summary*

Petitioner Eugene Rice was convicted of second degree robbery on October 17, 2011 in Placer County Superior Court and was sentenced to 9 years. His appeal to the Third District Court of Appeal was denied on 6/26/14. A petition for review with the California Supreme Court raising three claims was denied on December 18, 2013.

A federal petition for habeas corpus was filed on March 27, 2015—adding many more claims than had been previously exhausted with the California Supreme Court. In response to the Motion to Dismiss based on exhaustion, petitioner voluntarily struck his unexhausted claims, and filed an amended petition on December 23, 2015, along with a simultaneous request to strike his

---

[1] This case proceeds under the consent to a magistrate judge provisions of 28 U.S.C. 636(c).

1

unexhausted claims (ECF #s 16, 17. The amended petition contains the following claims, which all parties agree are exhausted:

1. The trial court violated due process by failing to instruct on consciousness of guilt;

2. Insufficient evidence for second degree robbery conviction;

3. Erroneous harmless error standard used by the state courts.

After independent review of the record, and applying AEDPA standards, the undersigned denies the Amended Petition.

*Factual Background*

The facts as related by the California Court of Appeal are accurate:[2]

August 7 Robbery at Penryn Valero (Manafov only)
Sukhwant Grewal was working as a cashier at the Valero gas station in Penryn early in the morning of August 7, 2010. At about 1:45 a.m., Manafov entered and robbed him. Manafov wore a sports cap covered with a black hood. He took a burrito from the freezer, put it on the counter, and handed Grewal money. When Grewal made change, Manafov showed Grewal a gun and demanded he hand over all the money, in a bag. A video surveillance camera captured the robbery. Grewal called 911 and the police arrived in about five minutes. Grewal was unable to select the robber from a lineup, but was able to identify a similar gun. The robber did not appear intoxicated.

August 10 Robbery at Colfax Chevron
On August 9, 2010, Rice, Manafov, and Jarnee Rivers [footnote 2 omitted] left Oakland and went to Sacramento. While there, Rice said they were going to "hit a lick," meaning commit a robbery. They drove on Interstate 80 towards Reno. Just after midnight on August 10, 2010, the clerk at the Penryn 76 gas station and his girlfriend saw a car approach and slow down. It first stopped near the entrance and then drove to the back where it stopped near an open door and the car's occupants looked inside. The car was red with no license plates. There were three occupants who all appeared to be male. The driver wore a fur-lined hood and the person in back wore black. The car sputtered off, as if the driver were unskilled in driving a manual transmission, and entered the freeway going east. The clerk and his girlfriend thought it was suspicious and called the police.
Charles McIntyre was working at the Colfax Chevron station that morning. The station is about 100 yards from the interstate. A male customer, Manafov, entered

---

[2] Reading the record to determine what evidence was applicable to petitioner Rice was somewhat difficult in that two juries were utilized at trial—one for petitioner and one for Manafov. Some of the more damning evidence vis-à-vis Rice was placed before the Manafov jury, but not the Rice jury. In addition, a video of witness Rivers' testimony viewed by both juries was not transcribed. However, after reviewing the entire transcript, the undersigned finds that the Rice jury heard the facts set forth for the Colfax Chevron robbery.

around 1:00 a.m. and selected a beverage. As McIntyre took his money and opened the cash drawer, Manafov produced a revolver. He pointed it at McIntyre and told him to empty the registers, giving McIntyre a small black plastic bag for the money. The robber was in his 20's and wore a black-hooded sweatshirt over a cap with red on it. He repeatedly told the clerk to hurry up, that he was not fast enough. The robber had a foreign accent. As the robber turned to leave he told McIntyre to "have a nice day." The robber took $1,377. McIntyre identified Manafov as the robber from a photographic lineup.

Officer Jack Hickey was on patrol and responded to the early morning call from the Chevron station. He watched the surveillance video of the robbery. It showed a vehicle pull in the north end of the station and park. A white male passenger walked to the store. The driver wore a white baseball cap. The car was red with no license plate. It had a DMV sticker on the left rear window, and a sunroof. Hickey gave a description of the suspect vehicle to dispatch. The suspect was wearing a red Oakland A's cap, a black-hooded sweatshirt, and black pants and had a large wristwatch. He had a black revolver and a black plastic bag for the money. Almost a half hour after the dispatch, a CHP officer saw a red sedan with no license plates, a sunroof, and three people inside. He followed it, waiting for backup. The car took the Kingvale exit and stopped, and then got back on Interstate 80.

When backup arrived, the officers conducted a felony stop. Manafov was the driver, Rice the front passenger, and Rivers was in the rear seat. All three were arrested. Rice was wearing a white tank top with a blue outer shirt; both Rivers and Manafov were dressed in black. Manafov did not appear to be under the influence of drugs.

Red and white baseball caps were seized from the car. The white cap was later found to contain hairs consistent in length to Rice's hair. There were multiple items of clothing in the trunk, including a jacket with a fur hood, as well as license plates. A loaded, black revolver was found under the hood of the car. A black plastic bag with money was under the rear seat. An employee time card and a traffic ticket, both in Rice's name, were also found in the car.

Rivers testified that she was asleep during part of the drive, but awoke when Manafov and Rice changed places. She heard the trunk and the hood slam. Rice got in the passenger seat and handed her a black bag and told her to put it under the seat.

People v. Manafov and Rice, 2013 WL 5414106 *1-2 (Cal. App. 2013)

### *AEDPA Standards*

The statutory limitations of a federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) provides:

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 562 U.S. 86, 98 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99, citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington, supra, at 101, citing Williams v. Taylor, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 101, *citing* Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id at 102. "Evaluating whether a rule application was

4

unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in §2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court's factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, at 102. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See, *e.g.*, Carey v.Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional

5

principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Id. at 8. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record regarding that issue. Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Finally, if the state courts have not adjudicated the merits of the federal issue, no AEDPA deference is given; instead the issue is reviewed de novo under general principles of federal law. Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012). However, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, __U.S.__ , 133 S.Ct. 1088, 1091 (2013).

*Discussion*

Consciousness of Guilt Instruction

A jail note written by petitioner to his co-defendant, Manafov, was submitted to the jury as evidence of petitioner's consciousness of guilt. This note was slipped into a door between housing units in the jail with the gestured direction that the inmate retrieving the note give it to Manafov. The note referred to the pending case against petitioner (the Colfax Chevron robbery) requesting that Manafov testify that petitioner did not know what was going on during the robbery. Petitioner cautioned Manafov not to testify against him lest he be termed a "rat," and that if Manafov testified in petitioner's favor, petitioner would tell his "family in the pen" that Manafov was to be treated as "our lil bra." The Court of Appeal concluded: "[f]rom this threat and promise, the jury could reasonably conclude Rice was attempting to suppress or fabricate evidence, thus showing his consciousness of guilt." People v. Manafov-Rice at *7.

Petitioner claims here that the trial court should have sua sponte given a consciousness of

guilt instruction, CALCRIM 371 (which would have informed the jurors that consciousness of guilt, although relevant to establishing guilt, was not sufficient in and of itself to prove guilt). Petitioner's claim founders upon the AEDPA requirement that the Supreme Court has established a rule requiring sua sponte instructions in non-capital cases. Respondent contends that no Supreme Court precedent exists which requires a trial court to sua sponte give an instruction where a defendant has not requested it. See generally Namet v. United States, 373 U.S. 179, 190 (1963) ("we see no reason to require such extravagant protection against errors which were not obviously prejudicial and which the petitioner himself appeared to disregard"). See also Lopez v. U.S., 373 U.S. 427, 436 (1963) (finding that where no request for an instruction was made, and no objection given, petitioner was prevented from challenging it). The above generally phrased waiver or forfeiture cases are relevant to the issue here, but the real point is that for petitioner to claim a federal constitutional right to a sua sponte instruction, clearly established Supreme Court precedent must exist that "squarely address [ ]" the issue presented. Wright v. Van Patten, 552 U.S. 120, 125 (2008).

In only one area has the Supreme Court mandated a sua sponte instruction, and that is the requirement that a lesser included offense instruction be given in capital cases. Beck v. Alabama, 447 U.S. 625 (1980). Lower courts have determined that Beck stands for the proposition that lesser offense instructions are to be given sua sponte, see Murtishaw v. Woodford, 255 F.3d 926, 935 (9th Cir. 2001); but that requirement does not extend to non-capital cases, Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998). This demonstrates the specificity necessary for a constitutional rule. Indeed, in the area of omitted jury instructions, federal courts will review only for plain error. Lopez, supra; United States v. Bear, 439 F.3d 565, 568 (2006). Thus, there can be can be no mandated constitutional right to a jury instruction, not even an instruction relevant to the elements of a crime or defense, in the absence of on-point Supreme Court authority.

Even if the undersigned was disposed towards a general jury instruction error analysis as an alternative analysis, petitioner's claim would fail.

> [F]ederal habeas relief is not available for an alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (iterating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). A state court's failure to give a particular jury instruction "does not alone raise a ground cognizable in a federal habeas corpus proceeding." Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir.1988); see also Estelle, 502 U.S. at 71–72. Thus, to the extent that Petitioner merely contends that the jury instruction should have been given as a matter of California law, his claim is not cognizable on federal habeas review. Estelle, 502 U.S. at 71–72. [footnote omitted]
>
> A claim that a state court violated a federal habeas petitioner's due process rights by omitting a jury instruction requires a showing that the error so infected the entire trial that the resulting conviction violated due process. Henderson v. Kibbe, 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir.2005); see also Estelle, 502 U.S. at 72 (discussing due process standard). Moreover, the alleged error must be considered in the context of the instructions as a whole and the entire trial record (including the arguments of counsel). Estelle, 502 U.S. at 72; United States v. Frady, 456 U.S. 152, 169, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Thus, even if the court's failure to provide the instruction was error, Petitioner still would not be entitled to habeas relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637–38; see also Bradley v. Duncan, 315 F.3d 1091, 1098–99 (9th Cir.2002). "Where the alleged error is the failure to give an instruction, the burden on the petitioner is 'especially heavy.' "Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992) (quoting Kibbe, 431 U.S. at 155).

Benjamin v. Harrington, 2012 WL 3248256 * 18-19 (C.D. Cal. 2012) (involving the lack of a consciousness of guilt instruction).

The undersigned recognizes that inferences drawn from consciousness of guilt, on the part of petitioner, may well have played a part in the jury finding petitioner guilty of being an active participant to the robbery. However, as set forth in the facts, there was also direct evidence implicating petitioner, especially that of his driving the car transporting the actual robber. Petitioner was also described by another of the car's occupants as the one who directed the placement of the black bag containing the robbery proceeds. Not only was there no duty under California law to give the consciousness of guilt instruction, as found by the appellate court in

////

////

8

this case, the failure to give the requested instruction was not substantially contributory to the verdict.³

### *Insufficient Evidence To Establish Second Degree Robbery*

Petitioner appears to argue that, absent evidence he claimed in the state appellate court to have been improperly admitted (nearly all the evidence), the evidence was insufficient to establish his guilt. See ECF 1 at 57-60; ECF 22 (Traverse). However petitioner places too much freight on the insufficiency train—the insufficient evidence analysis looks at all *admitted* evidence to establish whether a reasonable jury could convict; the insufficiency analysis does not permit an initial assessment of asserted evidentiary errors.

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir.2005). Sufficient evidence supports a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). "After AEDPA, we apply the standards of Jackson with an additional layer of deference." Juan H., 408 F.3d at 1274. Moreover, petitioner's challenge to the sufficiency of evidence based on credibility of the witnesses is not cognizable in an insufficient evidence claim. See McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir.1994); see also Schlup v. Delo, 513 U.S. 298, 330, 115 S.Ct. 851 (1995) (recognizing that the credibility of witnesses is generally beyond the scope of sufficiency of the evidence review).

The elements of second degree robbery are set forth in CALCRIM 1600 (see Cal. Penal Code section 211)

To prove that the defendant is guilty of this crime, the People must prove that:

    1. The defendant took property that was not (his/her) own;

    2. The property was in the possession of another person;

    3. The property was taken from the other person or (his/her) immediate presence;

---

³ The undersigned has not quoted the analysis of the Court of Appeal as it involves only a replication of state law. No harmless error analysis was undertaken.

1. 4. The property was taken against that person's will;

2. 5. The defendant used force or fear to take the property or to prevent the person from resisting.[4]

If all the evidence of record, and specifically that referenced by the Court of Appeal, is considered, including *inter alia*-- a video depicting petitioner as the robbery car driver, accomplice testimony that petitioner was the driver, that petitioner said that he and Manafov were going to "hit a lick," and that petitioner was well aware that a robbery had taken place, constitutes objective evidence from which an inference could be drawn that petitioner, at the very least was in the car used at the time of the robbery. When the forensic evidence tying petitioner to apparel worn during the robbery and the attempt to encourage/dissuade the co-defendant's testimony is added to the analysis, the evidence was well beyond sufficient for a second degree robbery conviction (as an aider and abettor).[5]

### *Erroneous Harmless Error Standard Utilized by the State Appellate Court*

On an underlying issue not raised herein, nor exhausted with the state supreme court, petitioner claims that the found error of permitting a detective to give his opinion that it was petitioner who was depicted in the video, required a different interpretation of the harmless error standard under state law— People v Watson, 46 Cal. 2d 818 (1946). He asserted that the application of the federal, non-habeas, constitutional harmless error application set forth in Chapman v. United States, 386 U.S. 18 (1967) (harmless beyond a reasonable doubt), was the standard to be used for habeas assessment of state law, non-constitutional errors.[6] However, this alleged error in state law is not cognizable herein. Estelle, supra. Moreover, on the issues *raised herein*, with the exception of an alternative analysis on the sua sponte jury instruction issue, no

---

[4] First degree robbery, often called "residential robbery" involves a robbery in an inhabited dwelling among other types of specific robberies; all other robberies are of the second degree. Cal. Penal Code section 212.5.

[5] The case against petitioner was presented to the jury as one of aiding and abetting. RT 470: "Mr. Rice is guilty of robbery by aiding and abetting its commission." [argument of prosecutor]. The jury was instructed that aiding and abetting a robbery made that person guilty of robbery. RT 459, 460-62, 464. Therefore, the jury was concerned with whether Manafov committed a robbery and whether petitioner aided and abetted that robbery.

[6] See Bains v. Cambra, 204 F.3d 964, 971 n. 2 (9th Cir. 2000).

alleged federal error has been found requiring the use of any federal harmless error standard.  As respondent observed, "[t]he fact that Petitioner may be attempting to characterize his claim as a federal constitutional claim is not sufficient to render it such.  See, e.g., Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1999)."

*Conclusion*

The petition is denied.

Accordingly, judgment shall be entered for respondent.  No certificate of appealability (COA) shall issue as the result here does not warrant further review under established standards.

Dated: May 14, 2017

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE